IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHANIE A. WALKER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV738 |
| | ) | |
| PETSENSE LLC and | ) | |
| TRACTOR SUPPLY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Walker initiated this action against Defendants Petsense, LLC ("Petsense") and parent corporation Tractor Supply Company on July 9, 2020 in North Carolina state court with the filing of a *pro se* complaint. (ECF No. 5.) Plaintiff's Amended Complaint, which is the operative complaint in this litigation, seeks damages in excess of twenty-five million dollars as a result of what she claims was the "intentional filing of false and malicious animal cruelty accusations against her" and her animal rescue organization. (ECF No. 6 at 1.) Defendants removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, (ECF No. 1), and now move to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cognizable claim upon which relief can be granted, (ECF No. 9).

### I. BACKGROUND

Plaintiff has been the director of Rita's Angels, an animal rescue organization serving North Carolina's Lee County, for more than two years. (ECF No. 6 ¶¶ 2, 7.) Defendant

Petsense is a company that provides pet adoption services to the public and at one time operated a store in the same county. (*Id.* ¶ 2.) Because Lee County's local animal shelter was not able to send its animals directly to Petsense's store, Plaintiff's organization worked with Defendant to transport animals between the two locations while providing the animals with medical care. (*Id.*)

Plaintiff claims that, despite this working relationship, a "false and malicious defamatory" comment was posted on Rita's Angels Facebook page in June 2019 by an account bearing the name of Chris Eichele—the husband of Petsense's Assistant Manager, Diane Hamilton. (*Id.* ¶ 10.) This comment stated that the number of animals Plaintiff cared for constituted a "hoarding level" and that all of the animals failed to receive the requisite medical care. (*Id.* at 16.) The comment also stated that, after a fire, "[Lee County] removed 40+ dogs from the home [that were] all covered in fleas and a few [were] sick to the point of major [quarantine]." (*Id.*) Finally, the comment asserted that Rita's Angels "put[s] cats in local pet stores and leave[s] them there sick[,] and [they] have to be threatened with reporting to get them to provide medical care." (*Id.*)

In addition to this written statement, Plaintiff further alleges that Petsense employees have made a number of inflammatory verbal declarations impugning Rita's Angels to government officers, including accusing her and her facility of animal cruelty in conversations with local law enforcement, (*id.* ¶ 12), and stating to a North Carolina State Agriculture Department official that Plaintiff had been negligent in her care of animals, (*id.* ¶ 13). Plaintiff also accuses Petsense Manager "Ms. Mapauna" of telling a Petsense customer that Plaintiff and her facility were "bad news," that both "should be avoided at all costs," and that she heard

2

"more charges" were going to be brought against Plaintiff and/or her facility. (*Id.* ¶ 15.) Plaintiff further contends that Ms. Mapauna and Ms. Hamilton made regular statements to the general public accusing Plaintiff and her rescue of animal cruelty. (*Id.* ¶ 16.)

Plaintiff alleges that, as a result of these "knowingly false and malicious accusations" intended to shift blame from Defendants, she has been subjected to "shame, ridicule, and contempt within her community and among her peers" that have led to her experiencing anxiety, fatigue, and depression. (*Id.* ¶¶ 17, 27, 30.) Further, Plaintiff contends that she and her facility are no longer able to work with Lee County animal shelter due to the nature of Defendants' statements, (*id.* ¶ 19), nor are they able to fundraise through local stores as they had previously, (*id.* ¶¶ 24).

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable

claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff" but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citation and internal quotation marks omitted). While a court's evaluation of a Rule 12(b)(6) motion to dismiss is "generally limited to a review of the allegations of the complaint itself," a court can also consider documents "attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citation omitted).

When considering a Rule 12(b)(6) motion, a court must be mindful of the principle that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also Noble v. Barnett,* 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, "[w]hile a pro se litigant's pleadings are liberally construed, a pro se complaint must still contain sufficient facts to raise a right to relief above the speculative level and state a claim to relief that is plausible on its face." *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) (internal citation and quotations omitted).

**III. DISCUSSION**

While Plaintiff alleges several facts in her Amended Complaint, Defendants are correct to point out that she "does not specify which causes of action she is asserting." (ECF No. 10 at 1 n.1.) As discussed above, however, a court must construe a *pro se* complaint liberally and, upon a motion to dismiss, consider whether the facts alleged state a cognizable claim even when a plaintiff does not specify the legal basis upon which the complaint is grounded. Here, Defendants move the Court to dismiss Plaintiff's claims for defamation. (*Id.* at 1–2.) Accordingly, the Court will focus its analysis on such claims.

To succeed on a defamation claim in North Carolina, "a plaintiff generally must show that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Desmond v. News & Observer Publ'g Co.*, 772 S.E.2d 128, 135 (N.C. Ct. App. 2015); *see also Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004). The statement at issue must be "a statement of fact, not opinion, but an individual cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability." *Desmond*, 772 S.E.2d at 135 (citation and internal quotation marks omitted). Whether a statement is fact or opinion is a question of law. *Id.* (quoting *Lewis v. Rapp*, 725 S.E.2d 597, 602 (N.C. Ct. App. 2012)).

"North Carolina retains two distinct defamation torts—slander, which involves spoken words, and libel, which involves written words." *Moore,* 341 F. Supp. 2d at 574 (citing *Eli Rsch. Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004)). Each of these categories "may be actionable *per se* or actionable *per quod.*" *Id.* A statement may be considered actionable *per se* when its defamatory character is clear "when considered alone, without

5

innuendo or explanatory circumstances." *Id.* On the other hand, a statement may be considered actionable *per quod* when the words appear defamatory "only in connection with extrinsic, explanatory facts."[1] *Id. Per se* allegations provide "a prima facie presumption of malice and a conclusive presumption of damages," whereas those contentions alleged *pro quod* are obligated to show special damages. *Eli Rsch.*, 312 F. Supp. 2d at 761. Because Plaintiff fails to explicitly name the type of defamation she is alleging, the Court will consider the possible claims from the facts presented in the Amended Complaint.

### A. *Libel*

In the allegations set forth by Plaintiff, only the purported Facebook post from Mr. Eichele's account appears to be a written statement and therefore the only statement the Court considers under a theory of libel. Defendants, however, argue that Mr. Eichele's conduct is not attributable to Defendants and therefore must be dismissed. More specifically, Defendants contend that they did not employ Mr. Eichele and, even if they had, they would not be vicariously liable under a theory of respondeat superior for any statements he may have made given that such a post would not have been in the scope of their employees' work. (ECF No. 10 at 5–7.)

Plaintiff, for her part, does not appear to dispute such contentions. Rather, in her Response to Defendants' Motion to Dismiss, she argues that the Court should read her Amended Complaint to assert that Mr. Eichele's wife, Petsense Assistant Manager Diane

---

[1] A third type of libel, not at issue here, involves "publications susceptible of two interpretations one of which is defamatory and the other not." *Renwick v. News * Observer Publ'g Co.* 312 S.E.2d 405, 408 (N.C. 1984) (quoting *Arnold v. Sharpe*, 251 S.E.2d 452, 455 (N.C. 1979)). To state such a claim, a complaint must allege that the publication is "susceptible of two meanings, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom publication was made." *See id.*

Hamilton, "had access to her husband's Facebook page on June 12th, 2019 while he was at the store on her shift that evening." (ECF No. 14 at 3.) This is, however, new information not included in the Amended Complaint and, even if the Court were to credit this argument, Plaintiff does not assert at any time that Ms. Hamilton did, in fact, write, publish, or authorize such a post. (*See* ECF Nos. 6; 14.)

In sum, Plaintiff merely suggests that one of Defendants' employees could have published such a statement using a non-employee's account. These allegations, even construed liberally on behalf of the Plaintiff, fail to raise the right to relief beyond a mere speculative level and are therefore insufficient to state a cognizable claim against the Defendants for libel *per se* or libel *per quod*. Accordingly, the Court dismisses all counts of libel against Defendants in this case.

    B.    *Slander*

The Court next considers the potential claims for slander in Plaintiff's Amended Complaint. As discussed above, North Carolina recognizes two types of slander—slander *per se* and slander *per quod*. *Donovan v. Fiumara*, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994). "Slander *per se* is a false oral communication that amounts to (1) an accusation the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease." *Eli Rsch.*, 312 F. Supp. 2d at 761. Unlike slander *per se*, slander *per quod* "involves a spoken statement of which the harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear 'only in consequence of extrinsic, explanatory facts

showing its injurious effect.'" *Donovan*, 442 S.E.2d at 574–75 (quoting *Badame v. Lampke*, 89 S.E.2d 466, 467–68 (N.C. 1955)).

As the Court observed earlier, Plaintiff appear to allege four instances of slander. First, Plaintiff alleges that Defendants made false and malicious statements to law enforcement officials regarding accusations of animal cruelty at the hands of Plaintiff. (ECF No. 6 ¶ 12.) Second, Plaintiffs allege that Defendants made similar statements to a state Agriculture Department official, accusing Plaintiff of negligent care of animals. (*Id.* ¶ 13.) Third, Plaintiff contends that a Petsense employee told a customer that Plaintiff was "bad news," "should be avoided at all costs," and was facing criminal charges. (*Id.* ¶ 15.) Fourth, and finally, Plaintiff alleges that Petsense employees regularly communicated to the general public that Plaintiff and her rescue acted with cruelty in their treatment of the animals in their care. (*Id.* ¶ 16.)

To begin, it appears that Plaintiff has stated a prima facie case of slander *per se* with regards to alleged statements made to local law enforcement as well as state officials. She contends that Defendants' employees "knowingly made false and malicious statements" asserting that Plaintiff and her rescue had engaged in animal cruelty and negligent care. (*Id.* ¶¶ 12–13.) She further states that the employees were "operating within the scope of their employment" through their attempts to shift responsibility for the poor health of Petsense's animals towards Plaintiff. (*Id.* ¶¶ 17–18, 33.) Such statements are sufficient to state a claim that Defendants made a false oral communication accusing Plaintiff of a crime of moral turpitude or one which impeaches Plaintiff in her profession.

Defendants, however, argue that they have qualified privilege with respect to these alleged statements. (ECF No. 10 at 7.) Under North Carolina law, a statement communicated

under a qualified privilege that is made "without actual malice" will result in "no civil liability, regardless of whether or not the communication is libelous *per se* or libelous *per quod*." *Ponder v. Cobb*, 126 S.E.2d 67, 78 (N.C. 1962) (alterations added). The elements for establishing such a privilege are "[1] good faith, [2] an interest to be upheld, [3] a statement limited in its scope to this purpose, [4] a proper occasion and [5] publication in a manner and to the proper parties only." *Kinesis Advertising, Inc. v. Hill*, 652 S.E.2d 284, 297 (N.C. Ct. App. 2007). In North Carolina, qualified privilege is an affirmative defense that generally "must be specially pleaded." *Stewart v. Nation–Wide Check Corp.*, 182 S.E.2d 410, 414 (N.C. 1971). A defendant asserting this defense carries the burden of "establish[ing] facts sufficient to support this plea." *Id.*

Here, Defendants assert that the "alleged statements made to the state agency are subject to a qualified privilege" and therefore Plaintiff's claim for defamation pursuant to any such statements should be dismissed. (ECF No. 10 at 8.) While Defendants may be able to establish that they meet this standard in subsequent litigation, they have not met their burden here. Plaintiff has plausibly alleged that the statements at issue were not made in good faith by contending that Defendants made them despite knowing they were false and for the purpose of shifting blame. (*Id.* ¶ 17.) In her Response, Plaintiff also contends that her rescue "is not and was not [at the time of the statements] under the jurisdiction" of the state agency in question, (ECF No. 14 at 4), thereby calling into question whether the statements were made on a proper occasion and to the proper parties only. Construing all allegations at this stage in favor of the nonmovant, the Court declines to dismiss the claims of slander *per se* as they relate to the statements made to local law enforcement and state officials.

9

The next statements at issue allegedly occurred at Defendants' store. Plaintiff alleges that she overheard Ms. Mapauna, the store manager, refer to her as "bad news" and a person who "should be avoided at all costs." (ECF No. 6 ¶ 15.) Further, Plaintiff contends that Ms. Mapauna "also stated that she'd heard 'more charges were coming'" against Plaintiff or her rescue. (*Id.*) With regards to the statements that Plaintiff was "bad news" and should be avoided, such assertions reflect the speaker's opinion and therefore, as discussed above, cannot be the basis for a defamation claim. Further, to the extent that Ms. Mapauna stated that she had "heard 'more charges were coming,'" Plaintiff does not dispute the truth of this statement and acknowledges that she was "upset to hear that the manager knew of the charges." (*Id.*) Defendants are correct to point out that, under North Carolina law, "[t]he truth of an allegedly defamatory statement is a complete defense to an action for defamation." *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 836 S.E.2d 322, 329 (N.C. Ct. App. 2019) (citation omitted). Accordingly, the Court finds that Plaintiff has not alleged sufficient facts to survive a motion to dismiss based on these statements.

Finally, Plaintiff alleges that Defendants' employees made "knowingly false and malicious statements to the general public accusing the Plaintiff and rescue of animal cruelty towards the animals in Petsense management's care." (ECF No. 6 ¶ 16.) Defendants argue, however, that these alleged statements lack the specificity required to survive a motion to dismiss. (ECF No. 10 at 13–14.) The Court agrees. As noted above, a claim is sufficient under Rule 8(a)(2) only when it "gives the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). These contentions fail to specify to whom such comments were allegedly made, the contextual nature

10

of such comments, what grounds Plaintiff has for her belief that these interactions occurred, and how these statements could plausibly be said to have occurred in the furtherance of Defendants' interests. Accordingly, the Court concludes that Plaintiff has not alleged sufficient facts to state a claim for defamation with regards to these statements.

Therefore, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 9), is GRANTED IN PART AND DENIED IN PART as follows:

A. The motion is GRANTED with respect to Plaintiff's claims for libel;

B. The motion is further GRANTED with respect to Plaintiff's claims for slander to the extent that they rely on the aforementioned statements of opinion, accurate factual assertions, and vague statements to the "general public" discussed above; and

C. The motion is DENIED with respect to Plaintiff's claims for slander per se to the extent that Plaintiff bases her claims on Defendants' employees' interactions with state and local officials.

This, the 31st day of March 2021.

/s/ Loretta C. Biggs
United States District Judge

11

Case 1:20-cv-00738-LCB-JEP   Document 17   Filed 03/31/21   Page 11 of 11