IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHANIE A. WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV738 |
| | ) | |
| PETSENSE, LLC and TRACTOR SUPPLY COMPANY, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 46.) Plaintiff initiated this action *pro se*[1] in state court, (ECF No. 1-1 at 8–11), which Defendants removed to this Court, (ECF No. 1). After removal, Defendants filed a Motion to Dismiss, (ECF No. 9), which was granted in part and denied in part by Order of this Court dated March 31, 2021, (ECF No. 17). As a result of the March 31st Court's Order, Plaintiff's only remaining claim is for "slander per se to the extent that Plaintiff bases her claim on Defendants' employees' interactions with state and local officials." (*Id.* at 11.) Defendants' now move for summary judgment as to this remaining claim. (ECF No. 46.) For the reasons stated herein, Defendants' motion will be granted.

---

[1] Though Plaintiff initiated this action *pro se*, (ECF No. 1), she is now represented by counsel, (*see* ECF No. 31).

## I. BACKGROUND

The evidence in the record demonstrates the following: Beginning in December 2017, Plaintiff Stephanie Walker owned and operated Rita's Angels Second Chance Animal Rescue and Sanctuary, ("Rita's"), an animal rescue serving Lee County, North Carolina. (ECF No. 50-2 at 8:1-2, 8:18, 12:10, 12:25–13:1.) During the two years Rita's was in operation, the rescue obtained animals from shelters and cared for them by providing food, water, medical care, and socialization. (*Id.* at 9:12-17.) Defendant Petsense, LLC ("Petsense") was at all relevant times a pet store in Sanford, North Carolina that held adoption events which allowed local rescues to come in and showcase their animals. (ECF Nos. 46-1 at 15:14-22; 50-2 at 17:5-11.)

In January 2019, Rita's began leaving cats at Petsense to showcase for adoption. (ECF No. 50-2 at 18:1-19.) Under the arrangement between Petsense and Rita's, Petsense's employees were responsible for the daily care of the cats including food, water, and cleaning the cages, (*id.* at 18:20–19:8), while Rita's remained responsible for the veterinary care of the cats, (*id.* at 19:9-15). Based on the parties' arrangement, if Petsense contacted Plaintiff to inform her that a cat was sick, Plaintiff was responsible for picking up the cat and taking it to the veterinarian. (*Id.* at 19:12-15.)

In June 2019, a set of cats that Rita's brought to Petsense were ill. (ECF No. 46-1 at 108:19-25.) When the cats' condition did not improve after a week, Mapauna Naki Sheaves, ("Ms. Naki"), the General Manager for Petsense, became concerned and began reaching out to Plaintiff to retrieve the ill cats and provide them with veterinary care. (*Id.* at 49:24–50:10, 108:16-20.) The parties have different accounts regarding what occurred next.

2

According to Defendants, Ms. Naki called Plaintiff's phone but did not receive an answer. (*Id.* at 51:1-2, 110:17-21.) She also reached out to Plaintiff through Facebook Messenger and text message. (*Id.* at 56:1-3, 111:24–112:2.) Ms. Naki also informed Plaintiff that the cats needed to be taken to the veterinarian when Plaintiff came to the store to pick up donations. (*Id.* at 51:2-10, 53:20-23, 112:21-25, 114:3-17.) Plaintiff responded that she was unable to retrieve the cats, but that Debbie Oldham, a "floating volunteer" at the local animal shelter who helps rescues as needed would come to pick up the cats later. (*Id.* at 51:4-7, 53:23-25, 74:18-19, 105:21-24; ECF No. 50-2 at 15:6-8, 15:14.) However, when Ms. Naki asked Ms. Oldham about picking up the cats via text, Ms. Oldham was unaware that she was supposed to retrieve the sick cats. (ECF No. 46-1 at 54:1-4.) On June 10, 2019, Plaintiff responded to Ms. Naki and stated that she would stop by later that day; however, Plaintiff visited Petsense for approximately ten minutes and left without any cats. (*Id.* at 112:18-113:2; ECF No. 50-1 at 132.)

According to Plaintiff, she always personally picked up the sick cats and took them to the veterinarian within twenty-four hours of being contacted by Petsense. (ECF No. 50-2 at 49:3-11.) Plaintiff testified that June 10, 2019, was the final time Petsense contacted her to retrieve the cats and take them to the veterinarian, which she states that she did the same day. (*Id.* at 50:22-23, 51:8-11.) After the cats were cleared, Plaintiff brought them back to Petsense and provided the store with the vet records. (*Id.* at 119:1-7.)

On June 14, 2019, the North Carolina Department of Agriculture and Consumer Services, Veterinary Division, Animal Welfare Section's ("NCDoA") received a complaint alleging that Rita's cats at Petsense were sick, and that Plaintiff refused to come pick up the

3

cats and provide care after numerous requests by Petsense. (ECF No. 46-4 at 1.) In response, Elizabeth E. Garner, the NCDoA Animal Health Technician assigned to the area, visited Petsense accompanied by Sergeant K. Gilstrap of the Lee County Sheriff's Office.[2] (*Id.* at 2; ECF No. 46-3 ¶¶ 2, 3, 9.)

While at Petsense, Ms. Garner met and spoke with Destini Griffin, a Petsense employee. (ECF Nos. 46-3 ¶ 10; 46-4 at 2.) Ms. Garner and Sergeant Gilstrap asked Ms. Griffin if the ill cats had received care, to which Ms. Griffin responded that they had not. (ECF Nos. 46-3 ¶ 10; 46-4 at 2.) Ms. Griffin informed them that "the cats' poor medical condition had persisted for a week" and that "her store manager had contacted Rita's on several occasions to pick up the cats and take them to a vet but that no one had come to collect the animals." (ECF Nos. 46-3 ¶ 10; 46-4 at 2, 5.)

Ms. Garner also spoke on the phone to Ms. Naki during which she explained the nature of her visit. (ECF Nos. 46-3 ¶ 12; 46-4 at 3, 5.) Ms. Naki informed her that she had been in contact with Rita's via text message for the last week to pick up the sick cats. (ECF Nos. 46-3 ¶ 12; 46-4 at 3, 5–6.) Ms. Naki forwarded Ms. Garner screenshots of two messages sent to Plaintiff and one sent to Ms. Oldham asking them to pick up the sick cats. (ECF Nos. 46-3 ¶ 12; 46-4 at 3, 5–6.) After receiving this information, Sergeant Gilstrap called Ms. Oldham to retrieve the sick cats and take them to the veterinarian, which she did that day. (ECF No. 46-4 at 2–3.)

---

[2] Ms. Garner requested that Sergeant Gilstrap accompany her to Petsense because there was an open investigation by the Lee County Sheriff's Office into a fire that occurred at Rita's two days prior in which multiple canines died. (ECF No. 46-3 ¶¶ 6, 9.)

Ms. Garner reported the incident to the Lee County Sheriff's Office, and an incident report for "Animal Cruelty" was subsequently completed. (*Id.* at 4–6.) As a result, a criminal summons for cruelty to animals was issued for Plaintiff. (*Id.* at 10.) However, the charge for animal cruelty filed against Plaintiff was eventually dismissed. (ECF No. 50 at 5.)

The Court will first address the law governing the resolution of Defendant's motion for summary judgment on Plaintiff's claim of slander per se.

## II.  NORTH CAROLINA LAW ON SLANDER

Under North Carolina law, "[s]poken communication to a third person of false and defamatory words which 'tend to prejudice another in his reputation, office, trade, business, or means of livelihood' is actionable slander." *Averitt v. Rozier*, 458 S.E.2d 26, 28 (N.C. Ct. App. 1995) (quoting *Morrow v. Kings Dep't Stores*, 290 S.E.2d 732, 736 (N.C. Ct. App. 1982)). "Slander per se is a false oral communication that amounts to (1) an accusation the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease." *Eli Rsch., Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004). "A *prima facie* presumption of malice and a conclusive presumption of legal injury and damage arises when a false statement falling into one of these categories is spoken." *Barker v. Kimberly-Clark Corp.*, 524 S.E.2d 821, 824–25 (N.C. Ct. App. 2000).

Even if a statement constitutes slander per se, such claim may not be viable or actionable if the speaker holds a qualified privilege. *Guider v. Hertz Corp., Rent-A-Car Div.*, No. 1:04CV00126, 2004 WL 1497611, at *5 (M.D.N.C. June 28, 2004). A statement communicated under a qualified privilege that is made "without actual malice" will result in "no civil liability."

5

*Ponder v. Cobb*, 126 S.E.2d 67, 78 (N.C. 1962); *see Kling v. Harris Teeter Inc.*, 338 F. Supp. 2d 667, 673 (W.D.N.C. 2002) ("It is well-settled that when an otherwise defamatory communication is made in furtherance of a political, judicial, social, or personal duty, the declarant is entitled to a qualified privilege unless actual malice is shown." (citing *Dobson v. Harris*, 530 S.E.2d 829 (N.C. 2000)), *aff'd*, 86 F. App'x 662 (4th Cir. 2004). "A qualified privilege exists when a communication is made":

> (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest.

*Kinesis Advert., Inc. v. Hill*, 652 S.E.2d 284, 297 (N.C. Ct. App. 2007). Thus, the essential elements for establishing such a privilege are "[1] good faith, [2] an interest to be upheld, [3] a statement limited in its scope to this purpose, [4] a proper occasion and [5] publication in a manner and to the proper parties only." *Id.*

"Where the affirmative defense of privilege is alleged, the burden is on the defendant to establish facts sufficient to show that the publication of the alleged defamation was made on a privileged occasion." *June Cho v. Duke Univ.*, No. 1:18CV288, 2020 WL 353617, at *9 (M.D.N.C. Jan. 21, 2020) (quoting *Shuping v. Barber*, 365 S.E.2d 712, 714 (N.C. Ct. App. 1988)). The determination as to "[w]hether a communication is privileged is a question of law for the court to resolve, unless a dispute concerning the circumstances of the communication exists, in which case it is a mixed question of law and fact." *Kinesis Advert.*, 652 S.E.2d at 297. "Where a qualified privilege is found, the communication in question is presumed to have been made in good faith and without malice." *Guider*, 2004 WL 1497611, at *5 (citing *Phillips v. Winston–Salem/Forsyth County Bd. of Educ.*, 450 S.E.2d 753, 756 (N.C. Ct. App. 1994)).

**III    DISCUSSION**

Defendants in their motion argue that they are entitled to judgement as a matter of law because the statements made by Defendants employees to state and local officials regarding Plaintiff were in fact true; and even if such statements are shown to constitute slander per se, the employees are entitled to a qualified privilege. (ECF No. 47 at 11–23.)

Plaintiff argues in response that: (1) the statements made by Defendants' employees impeached Plaintiff in her business and accused her of engaging in a crime of moral turpitude; (2) that the statements made by Defendants were false; and (3) Defendants are not covered by a qualified privilege. Specifically, Plaintiff disputes whether the statements were made to the proper parties on the proper occasion and whether the statements were made in good faith. (ECF No. 50 at 10–11.)

As earlier stated, the sole remaining claim before the Court is Plaintiff's slander per se claim to the extent that such claim is based on Petsense's employees' interactions with state and local officials. (ECF No. 17 at 11.) Here, Plaintiff in her Brief in Response to this motion references several statements allegedly made by Petsense employees, an employee's husband, and others, about Plaintiff and her care of cats that she had left at Petsense for adoption. (ECF No. 50 at 5–8). However, due to the limited inquiry before the Court, the only statements that are potentially actionable and therefore relevant to the Court's analysis here are those made by Defendants' employees to Ms. Garner of the NCAoD and Sergeant Gilstrap of the Lee County Sheriff's Office. Plaintiff contends that statements made by Chris Eichele, Ms. Naki, and Ms. Griffin, to Ms. Garner and Sergeant Gilstrap while the officials were at Petsense to investigate the condition of the cats constitutes slander per se. (*Id.* at 6–8.) However, despite

Plaintiff's reference to Mr. Eichele in her brief as a "keyholder employee at Petsense", (*id.* at 4), there is simply no evidence in the record to support that Mr. Eichele is a Petsense employee, but rather is the husband of an employee, (ECF No. 46-3 ¶ 8). Therefore, the Court will not consider his statements as potentially actionable here.

In her deposition, Plaintiff states that her only knowledge of what was told the officials during their investigation came from NCDoA's records. (ECF No. 50-2 at 43:12-15.) Specifically, Plaintiff points to Ms. Garner's report which reads as follows regarding statements made by Ms. Griffin and Ms. Naki only: "We asked [Ms. Griffin] if these cats have received care, and she tells us no they have not. She explains that the store manager has been reaching out to the rescue to pick them up, but they have not done that. [Ms. Griffin] tells us the diarrhea has been on-going for at least a week, and she believes the kittens have been here for about a month." (ECF No. 46-4 at 2.) With respect to Ms. Naki, Ms. Garner's report states "[Ms. Naki] tells me she has been in contact with the rescue for the last week via text to pick up these cats. She has agreed to send me the texts." (*Id.* at 3.) Plaintiff argues that these statements are false, and further that such statements accuse her of "engaging in a crime of moral turpitude and impeached her in her business or trade." (ECF No. 50 at 6.)

While Defendants do not deny that the employees made these statements, they do contend that the statements are true and even if not true, the employees made them believing them to be true, and therefore they do not constitute slander. (ECF No. 47 at 1.) There is ample evidence in the record to support that Ms. Naki's statement that she was "in contact with [Plaintiff] for the last week to pick up cats" is true. (*See e.g.*, ECF No. 46-3 at 12–14.) However, it appears that when viewing the evidence in the light most favorable to Plaintiff,

she has raised a genuine issue whether Ms. Griffin's statement regarding the cats receiving veterinary care is true, and whether Plaintiff did in fact pick up the cats on June 10th and provided them with vet care before returning them to Petsense. (*Compare* ECF Nos. 46-1 at 112:18-113:2; 50-1 at 132; *with* ECF Nos. 50-2 at 51:8-11; 50-5 ¶ 13.) Nevertheless, Defendants argue that even if the statements made by Petsense employees were false and defamatory, they are still entitled to summary judgment because the statements were made under qualified privilege. (ECF No. 47 at 13–16.)

Plaintiff, on the other hand, argues that this Court cannot grant summary judgment for Defendants, because Defendants argument regarding qualified privilege is barred by the "law-of-the-case." (ECF No. 50 at 9–13.) This Court disagrees.[3] The Court will next address whether Defendants have met their burden of establishing that the statements made by Ms. Griffin and Ms. Naki are entitled to a qualified privilege.

A. <u>Statements By Petsense Employees were Made to the Proper Parties on a Privileged Occasion</u>

For qualified privilege to apply to an otherwise defamatory statement, the statement must be made to the proper parties on a privileged occasion. *Kinesis Advert.*, 652 S.E.2d at 297. A statement is made to the proper parties when it is made by a declarant who has an interest, right, or duty on the subject matter, to an individual with a corresponding interest, right or

---

[3] Plaintiff's reading of this Court's Order and her application of the "law-of-the-case" doctrine are both incorrect. The Court did not rule that the defense of qualified privilege was barred in its prior Order. (*See* ECF No. 17.) Rather, the Court found that Defendants did not meet their burden of establishing qualified privilege at the Motion to Dismiss stage, and that "Defendants may be able to establish that they meet this standard in subsequent litigation." (*Id.* at 9.) Thus, Plaintiff's argument has no merit and, therefore, Defendants are not barred from asserting the defense of qualified privilege.

9

duty. *Id.* "This duty may be public, personal, or private and of a legal, judicial, political, moral, or social nature." *Shuping*, 365 S.E.2d at 714. A privileged occasion is "an occasion when for the public good and in the interests of society one is freed from liability . . . [because of] the occasion of its publication." *Eng. Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (4th Cir. 1999) (quoting *Ponder*, 126 S.E.2d at 78).

Here, the statements made by Petsense employees to Ms. Garner and Sergeant Gilstrap were made by the proper parties on a privileged occasion.

As an Animal Health Technician, Ms. Garner is a state official charged with conducting inspections of licensees and investigations into violations of the Animal Welfare Act, as authorized by N.C. Gen. Stat. § 19A-25. (ECF No. 46-3 ¶ 3.) In this position, she had an interest and duty in ensuring that Petsense was in compliance with its regulations and that animal cruelty was not occurring at Petsense. (*See id.* ¶ 8.) Also in her position, Ms. Garner has an interest in the welfare of the animals housed at a business she regulates. Ms. Griffin and Ms. Naki, in making the alleged defamatory statements, were responding to questions of an NCDoA official charged with regulating their employer. Both employees knew that Petsense was regulated by the NCDoA and, therefore, felt obligated to answer Ms. Garner's questions. (ECF No. 46-1 at 99:6–100:4.) Moreover, the communication was limited to Ms. Garner who had a duty and interest in information regarding the sick animals. Thus, the statements were made by Petsense employees who had an interest in reporting conduct that could adversely affect the animals at its facility, to Ms. Garner, a state official with a corresponding interest in the welfare of the animals at Petsense. *See Phillips*, 450 S.E.2d at 756 (holding that statements made in a private meeting by a school board communications officer

to the superintendent were entitled to qualified privileged, because the communications officer "had a[n] interest in reporting any conduct to [the superintendent] which could adversely affect the school system.")

The statements made by Petsense employees to Sergeant Gilstrap were likewise made by the proper parties on a privileged occasion. "It is axiomatic that a police officer has an interest in undertaking an investigation into allegations of criminal conduct and in engaging in good faith effort to reach out to someone that has information about a suspect." *Sowell v. Walsh*, No. 1:15CV757, 2016 WL 6662257, at *5 (M.D.N.C. Nov. 10, 2016), *subsequently aff'd*, 690 F. App'x 104 (4th Cir. 2017) (internal quotation marks omitted). Sergeant Gilstrap accompanied Ms. Garner to Petsense to investigate the allegations of animal abuse. (ECF No. 46-4 at 6.) Sergeant Gilstrap contacted Ms. Oldham to retrieve the cats and take them to the veterinarian that day, which she did. (ECF No. 46-4 at 2–3.) As an officer undertaking an investigation into allegations of animal abuse, he had an interest and duty in obtaining information from Petsense employees regarding who may be responsible for the abuse of the animals.

Accordingly, the statements made by Petsense employees to Sergeant Gilstrap and Ms. Garner were made to the proper parties on a privileged occasion and, thus, will be entitled to qualified privilege unless Plaintiff can show that the statements were not made in good faith.

B. <u>Statements By Petsense Employees' to Officials were Made in Good Faith</u>

Because the statements made by Petsense employees were made to proper parties on a privileged occasion and thus are entitled to a qualified privilege, there is a presumption that Petsense employees acted in good faith and, therefore, the burden shifts to Plaintiff to prove

11

that the statements were made with actual malice. *See Sowell*, 2016 WL 6662257, at *5. In order to rebut the presumption that a statement was made in good faith and without malice, "a plaintiff must show that the speaker had actual malice." *Guider*, 2004 WL 1497611, at *5 (citing *Phillips*, 450 S.E.2d at 756). "Actual malice may be proven by a showing that the defamatory statement was made with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity," *Averitt*, 458 S.E.2d at 29, or "by some extrinsic evidence, such as ill feeling, or personal hostility, or threats, and the like, on the part of the defendant towards the plaintiff," *Ramsey v. Cheek*, 13 S.E. 775, 776 (N.C. 1891); *see Dobson*, 530 S.E.2d at 837. However, a plaintiff "is not bound to prove malice by extrinsic evidence." *Ramsey*, 13 S.E. at 776. Rather, she "may rely on the words of the libel itself, and on the circumstances attending its publication, as affording evidence of malice." *Id.*

The evidence offered to establish actual malice "must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." *Dobson*, 530 S.E.2d at 836. Thus, "[p]roof that the words are false is not sufficient evidence of malice, unless there is evidence that the defendant knew at the time of using them that they were false." *Ponder*, 126 S.E.2d at 76. However, "[t]hat the defendant was mistaken in the words made by him on such confidential or privileged occasion is, taken alone, no evidence of malice." *Id.* "If plaintiff's forecast of evidence of malice is 'not sufficient to permit reasonable minds to conclude' that the [speaker's] presumed good faith was nonexistent, then summary judgment for defendant is proper." *Dobson*, 530 S.E.2d at 836; *see Averitt*, 458 S.E.2d at 29 ("If the plaintiff cannot show actual malice, the qualified privilege becomes an absolute privilege, and there can be no recovery even though the statement was

false."); *June Cho*, 2020 WL 353617, at *9 ("Summary judgment is most appropriate where plaintiff, who, assuming the burden of production to negate defendant's presumption of good faith with evidence of actual malice, sets forth no specific fact showing an issue as to defendant's motive, but rests upon bare allegation and suspicion." (internal quotation marks omitted)).

Here, Plaintiff cannot establish that Ms. Griffin's or Ms. Naki's statement was made with actual malice. When asked if the cats have received care, Ms. Griffin responded that "no they have not," explaining that "the store manager has been reaching out to [Rita's] to pick [ ] up [the cats], but they have not done that." (ECF No. 46-4 at 2.) As earlier stated, a genuine issue exists regarding whether Plaintiff picked up the cats on June 10th. (*Compare* ECF Nos. 46-1 at 112:18-113:2; 50-1 at 132; *with* ECF Nos. 50-2 at 51:8-11; 50-5 ¶ 13.) However, even when construing the evidence in the light most favorable to Plaintiff, the allegation that Ms. Griffin's statement was false is insufficient to establish actual malice. Instead, Plaintiff must show that Ms. Griffin made the statement knowing that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity. There is no evidence in the record that Ms. Griffin knew this statement to be false or was reckless about its falsity. Plaintiff failed to depose Ms. Griffin despite the Court providing her additional time to complete discovery once she had retained counsel. Moreover, Plaintiff fails to assert any specific allegations against Ms. Griffin in her Amended Complaint, (*see* ECF No. 6), or provide any evidence about Ms. Griffin during her own deposition, (*see* ECF No. 50-2). Thus, Plaintiff has failed to establish that Ms. Griffin made her statement with actual malice.

13

Case 1:20-cv-00738-LCB-JEP   Document 69   Filed 07/06/22   Page 13 of 15

With respect to Ms. Naki's alleged defamatory statement, Plaintiff's evidence in the record is at best contradictory. Plaintiff first testified in her deposition that she is unaware whether Ms. Naki knew her statements to be false or if Ms. Naki was mistaken in her statements, (ECF No 46-2 at 64:5–25), and further that Plaintiff had no reason to believe and was unaware of any reason to believe that Ms. Naki would hold ill feeling or personal hostility toward her, (*id.* at 94:13–95:3). Later, however, Plaintiff argues in her brief that Ms. Naki made her statement with actual malice, because "[d]espite vet records showing that medication had been administered to the cats on June 10, Ms. Naki stated that she had been unsuccessfully attempting to contact Rita's about picking up the cats for the past week." (ECF No. 50 at 4.) To support this latest contention, Plaintiff cites to Ms. Naki's deposition and Ms. Garner's affidavit. However, there is no evidence in the record to support Plaintiff's contention that Ms. Naki asserted that "she had been *unsuccessfully* attempting to contact Rita's about picking up the cats for the past week." (*Id.* (emphasis added).) Rather, Ms. Garner's affidavit asserts that Ms. Naki "stated that she had texted Rita's for a week to retrieve the cats." (ECF No. 46-3 ¶ 12; *see also* ECF No. 46-4 at 3, (Ms. Naki informed Ms. Garner that "she ha[d] been in contact with the rescue for the last week via text to pick up these cats.").) In the portion of her deposition that Plaintiff cites, Ms. Naki only states that she reached out to Plaintiff. (ECF No. 46-1 at 66:10-20.) For support, Ms. Naki provided screenshots of the messages. (*See* ECF No. 46-3 at 12–14.) Ms. Naki makes no assertion that she was "unsuccessful" in her attempts at reaching Plaintiff. The evidence shows that Ms. Naki texted Rita's for a week to retrieve the cats. Plaintiff has failed to provide any evidence to the contrary. Therefore, Plaintiff has failed to establish that Ms. Naki's statement was false or made with actual malice.

14

Plaintiff has failed to meet her burden of establishing that the alleged slanderous statements made by Petsense employees were made with actual malice; therefore, "the qualified privilege operates as an absolute privilege and bars any recovery for the communication, even if the communication is false." *Averitt*, 458 S.E.2d at 29. Accordingly, Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's claim of slander per se.

## CONCLUSION

Because Defendants have demonstrated that they are entitled to judgement as a matter of law on Plaintiff's claim for slander per se, Defendant's motion for summary judgment must be granted. Further, since all other claims in Plaintiff's Amended Complaint have been dismissed by the March 31st Court Order, Plaintiff's action must now be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 46), is GRANTED and this action is DISMISSED.

This, the 5th day of July 2022.

/s/ Loretta C. Biggs
United States District Judge